Dwane I. **RUNYAN,** Plaintiff,

v.

**BOARD OF EDUCATION OF the COVINGTON EXEMPTED VILLAGE SCHOOL DISTRICT,** Defendant.

No. C-3-84-519.

United States District Court, S.D. Ohio W.D.

April 2, 1985.

Stephen D. Martin, Worthington, Ohio, for plaintiff.

James P. Barnes, Columbus, Ohio, for defendant.

## I. INTRODUCTION

RICE, District Judge.

Plaintiff was employed by Defendant in 1980 as a non-tenured industrial arts instructor under a five-year limited contract. (Stipulations, Doc. # 13, ¶ 4; Ex. A). Plaintiff was in the fourth year of his contract when he ceased his teaching duties at Covington Middle School and Covington High School on March 30, 1984. He now contends that Defendant deprived him of his property without affording him due process of law in connection with this termination of his teaching duties.

Plaintiff attests to difficulties with his hearing as of at least 1978. (Runyan deposition, p. 29). He lost his license as a school bus driver in 1982 due to these difficulties. By November, 1983, Plaintiff's personal physician, Dr. Miller, advised Plaintiff that the noise in his teaching environment was exacerbating his hearing loss and that this hearing loss permanently incapacitated Plaintiff from performing his teaching duties. (Runyan deposition, p. 34). Based on the recommendation of Dr. Miller, which was later confirmed by additional testing, Plaintiff submitted a disability retirement application to the State Teachers Retirement System (STRS) on or about December 27, 1983. (Doc. # 13, ¶ 6).

On or about March 20, 1984, Plaintiff and Larry G. Henry, Superintendent of the Covington Exempted School District, each received a copy of a letter from the STRS. (Doc. # 13, ¶ 7 and Ex. B). The letter stated that the STRS needed information as to Plaintiff's last day of teaching and last day of sick leave before it could complete the processing of Plaintiff's application for disability retirement. The letter further stated that Plaintiff had to terminate his teaching responsibilities as of March 30, 1984, in order for processing of the application to continue. There is no STRS policy which requires that an employee use all of his accumulated sick leave prior to receiving disability retirement benefits. (Zimmerman deposition, p. 53).

Plaintiff and Superintendent Henry met on March 20, 1984, to discuss the March 20 letter from the STRS. (Doc. # 13, ¶ 8). Plaintiff desired to terminate his teaching on March 30, 1984, as stipulated by the STRS, and communicated this desire to Superintendent Henry at the meeting. (Runyan deposition, p. 48). Plaintiff understood that the STRS' criterion for disability retirement was that he have a permanent injury or illness which prevented him from teaching. *Id.* Plaintiff also informed Superintendent Henry of his need to ascertain, for purposes of the letter from the STRS, the number of days of sick leave which he had accumulated. Superintendent Henry was unable to provide that information to Plaintiff during the course of the meeting.

Subsequent to his March 20th meeting with Superintendent Henry, Plaintiff learned from another employee of Defendant that he had accumulated 194½ days of sick leave. Plaintiff calculated that he would accumulate fifteen days of sick leave between March 30, 1984, the last day of his teaching, and the expiration of his accumulated days of sick leave. Plaintiff then responded to the letter which he had received from the STRS, informing them that his last day of teaching would be March 30, 1984, and that his last day of sick leave would be May 30, 1985. (Runyan deposition, p. 55; Doc. # 13; Ex. C).

Plaintiff and his pupils were switched out of the industrial arts shops and into classrooms for their regularly-scheduled meetings on March 20, 1984. This arrangement continued until Plaintiff's last day of teaching on March 30, 1984.

The STRS' response to Plaintiff's letter came in their letter of March 26, 1984, copies of which were again sent to Plaintiff and to Superintendent Henry. The STRS indicated that, on the basis of Plaintiff's plan to utilize his accumulated sick leave, and thus to draw his salary from Defendant through May of 1985, Plaintiff's application for disability retirement benefits would be considered in May, 1985, with

insurance coverage to begin on June 1, 1985. (Doc. # 13; Ex. D).

On March 28, 1984, members of Defendant Board of Education met to discuss Plaintiff's desire to exhaust his accumulated sick leave prior to being placed on disability retirement by the STRS. Superintendent Henry outlined for members of Defendant the options which Defendant's legal counsel had outlined with respect to Plaintiff's proposed utilization of his accumulated sick leave. The first option was to allow Plaintiff to exhaust his sick leave as he requested. The second option was to place Plaintiff on an unpaid leave of absence due to medical reasons, as authorized by Section 3319.13 of the Ohio Revised Code. (Henry deposition, p. 17–20).

Members of Defendant Board of Education met again on April 9, 1984, to discuss Plaintiff's plan to utilize his accumulated sick leave. They decided to pursue neither of the options previously outlined to them by Superintendent Henry. Rather, they looked to the collective bargaining agreement in effect between Defendant and the Covington Education Association, which represents the district's teachers.[1] Under Art. VI, Section 3 of the collective bargaining agreement, employees with five or more years of service, at the time of their retirement "shall receive payment based on the employee's rate of pay at retirement ... for one-fourth of the employee's accrued but unused sick leave up to a maximum of forty (40) days."[2] Defendant authorized Superintendent Henry

and Treasurer Brinkman to convert Plaintiff's accumulated sick leave into severance pay in accordance with this provision. This authorization occurred during an executive session; Defendant took no formal action on the issue. (Henry deposition, p. 45).

On April 10, 1984, Superintendent Henry sent a letter to the STRS to inform them that March 30, 1984, had been Plaintiff's last day of sick leave as well as his last day of teaching. (Doc. # 13; Ex. D, F). On April 13, 1984, Superintendent Henry met with Plaintiff and presented him with two checks. The first represented an amount calculated as the difference between Plaintiff's paychecks to date and the amount which Plaintiff had actually earned on a per diem basis. The second check represented Plaintiff's severance pay and was equal to forty days of sick leave. (Doc. # 13; Ex. G). Plaintiff accepted both checks, but later returned them.

On the basis of Superintendent Henry's letter of April 10, the STRS sent a letter to both Plaintiff and the Superintendent on April 12, 1984. The letter stated that Plaintiff's disability retirement application would be considered on May 18, 1984, and that his health insurance would become effective on June 1, 1984. (Doc. # 13; Ex. H).

On April 23, 1984, Plaintiff filed with Treasurer Brinkman a document entitled "Written Demand, Pursuant to § 3319.16, Ohio Revised Code, For a Hearing Before a Referee." (Doc. # 13, Ex. I). Attached to

---

**1.** Plaintiff is a member and former president of the Covington Education Association, and was a member of the negotiating team which struck the agreement with Defendant for the 1983–84 school year. (Runyan deposition, p. 11–12).

**2.** Art VI, Section 3, of the collective bargaining agreement, entitled "Severance Pay", provides in full:

Employees with five or more years of service to the Board of Education at the time of their retirement from the Covington Schools or death while an employee of the Covington Schools, shall receive payment based on the employee's rate of pay at retirement or death for one-fourth of the employee's accrued but unused sick leave up to a maximum of forty (40) days. In case of retirement, such pay-

ment shall not be made at the time of an employee's resignation. Such payment shall not be made until the employee officially retires and has an application for retirement approved by the State Teachers Retirement System or the Ohio School Employees Retirement System. Payment will not be made while the employee is still receiving regular paychecks. Conversion of sick leave upon retirement shall eliminate all sick leave credit accrued by the employee. In the event of death, while an employee, payment will not be made until a certified copy of the death certificate is filed in the Board of Education Office. Payment will be made to the predetermined beneficiary or the employee's estate.

said document was a sick leave affidavit completed by Plaintiff in which Plaintiff requested 200 days of sick leave beginning March 30, 1984, and ending May 13, 1985. (Doc. # 13, ¶ 16). It was a common practice for employees of Defendant to fill out a sick leave request after taking sick leave. (Runyan deposition, p. 19–20). The affidavit was Plaintiff's first such written request to utilize his accumulated sick leave. (Doc. # 13, ¶ 16).

Plaintiff's demand for a hearing was denied in a letter sent by Superintendent Henry to Plaintiff on April 25, 1984. Neither Defendant nor any of its agents or employees have approved the sick leave affidavit filed by Plaintiff on April 23, 1984. (Doc. # 13, ¶ 17).

On May 18, 1984, the STRS approved Plaintiff's application for disability retirement benefits, setting April 1, 1984, as the effective date for Plaintiff's receipt of benefits. (Runyan deposition, p. 66). The STRS made disability retirement benefit payments to Plaintiff until approximately June 29, 1984, when Plaintiff requested the STRS to discontinue his benefits and health coverage until resolution of the instant lawsuit. (Runyan deposition, p. 76).

The collective bargaining agreement governing Plaintiff and Defendant's relationship includes an internal grievance procedure with a right of appeal to the state courts. (Doc. # 13; Ex. L). Plaintiff has never filed a grievance under the collective bargaining agreement with respect to the dispute as to the proper disposition of his accumulated sick leave. (Doc. # 13, ¶ 21).

Plaintiff filed suit in this Court on June 6, 1984, seeking damages and equitable relief under 42 U.S.C. § 1983 against Defendant Board of Education, Superintendent Henry and Treasurer Brinkman. (Doc. # 1). On July 10, 1984, Defendants filed a Motion to Dismiss. (Doc. # 7). Joint Stipulations of Fact were filed by the parties on August 15, 1984. (Doc. # 13). Plaintiff dismissed his claims against the individual Defendants on August 16, 1984. (Doc. # 16). Defendant Board of Education filed its Motion for Summary Judgment on August 21, 1984 (Doc. # 19), which said motion was superseded, in its entirety, by a similar motion filed by the Defendant on September 10, 1984 (Doc. # 23). In its order of September 13, 1984, this Court mooted Plaintiff's Motion for a Preliminary Injunction. (Doc. # 2). Defendants' Motion to Dismiss was conditionally sustained unless Plaintiff prepared and served within a prescribed time an Amended Complaint which fully complied with Fed.R.Civ.P. 8. The Court chose not to rule upon Defendants' Motion for Summary Judgment at that time. (Doc. # 24). Plaintiff filed an Amended Complaint on September 14, 1984 (Doc. # 28), and filed his Motion for Summary Judgment on October 4, 1984. (Doc. # 30).

## II. DISCUSSION

### A. *Existence of a Protectible Property Interest.*

Plaintiff's position is that the conversion of his accumulated sick leave into severance pay constituted a termination of his employment by Defendant. He now seeks relief under 42 U.S.C. § 1983,[3] arguing that Defendant's denial of his written demand for a hearing meant that he was deprived of his property without procedural protection sufficient to satisfy the fourteenth amendment.

While Defendant has mounted a myriad of challenges to Plaintiff's suit, the initial inquiry in a case of this type is to determine whether the Plaintiff's interest is in fact within the fourteenth amendment's protection of property. *Spruytte v. Walters,* 753 F.2d 498 (6th Cir.1985); *Yashon v.*

---

**3.** 42 U.S.C. § 1983 reads, in pertinent part:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

*Hunt,* 696 F.2d 468, 470 (6th Cir.1983). Only if Plaintiff was deprived of a constitutionally protected property interest, provided that the other requirements of Section 1983 are met, do the fourteenth amendment's requirements of procedural due process apply. *See Board of Regents v. Roth,* 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). As to what constitutes such a property interest, the Supreme Court stated in *Roth, supra,* that:

> Property interests, of course, are not created by the Constitution. Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits.

*Id.* at 577, 92 S.Ct. at 2709. *See also Perry v. Sinderman,* 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972). Plaintiff cites his employment contract, state law and the collective bargaining agreement as the sources for the property interests of which he has been deprived, namely: (1) his employment as an industrial arts instructor for the school year 1984–85; (2) his accumulated sick leave; (3) the sick leave which he would earn during the exhaustion of his accumulated sick leave; and (4) the insurance benefits provided to him by virtue of his employment by Defendant. (Doc. # 28).

Examination of Plaintiff's claim reveals that his entitlement to exhaust his accumulated sick leave is the crux of his case. Plaintiff has no interest in returning to teaching. However, only if Plaintiff is still considered to be employed by Defendant during the 1984–85 school year can he draw his salary for that year in the guise of exhausting the sick leave which he had accumulated during prior years. His abili-

ty to accrue additional sick leave benefits and to remain insured by Defendant throughout the 1984–85 school year also turn on the affirmation of his status as an employee of Defendant during the 1984–85 school year despite his explicit declaration of his inability to perform his former duties. Having pieced together Plaintiff's argument as to the source of his right to exhaust his accumulated sick leave, this Court finds that it turns on a host of state law issues which remain largely unresolved.

Plaintiff roots his entitlement to utilize his accumulated sick leave even after ceasing his active teaching duties in both state law and the collective bargaining agreement. Section 3319.141 of the Ohio Revised Code provides in relevant part that:

> Teachers and non-teaching school employees, upon approval of the responsible administrative officer of the school district, may use sick leave for absence due to personal illness, pregnancy, injury, exposure to contagious disease which could be communicated to others, and for absence due to illness, injury or death in the employee's immediate family ... No sick leave shall be granted or credited to a teacher after his retirement or termination of employment.

Article VII, Section 1(A)(3) of the collective bargaining agreement similarly provides that "[e]mployees may use sick leave for absence due to illness, injury, incapacitation due to pregnancy, exposure to contagious disease which could be communicated to other employees if recommended in a written statement by a physician, and illness in the employee's immediate family."

No Ohio decisions construing Section 3319.141 or Art. VII, Section 1(A)(3) have been cited to this Court. Both parties, however, have cited decisions involving Section 124.38 of the Ohio Revised Code,[4]

4. Section 124.38 of the Ohio Revised Code provides in relevant part:
Each employee in the various offices of the county, municipal, and civil service township service, each employee of any state college or university, and each employee of any board of education for whom sick leave is not provided by section 3319.141 [3319.14.1] of the Revised Code, shall be entitled for each completed eighty hours of service to sick leave of four and six-tenths hours with pay. Employees may use sick leave, upon approval of the responsible administrative officer of the employing unit, for absence due to personal ill-

which provides the terms for sick leave for civil service employees and employees of state colleges and universities. Plaintiff contends that the authority under Section 124.38 indicates the nature of his vested right in his sick leave. Like Section 3319.141, Section 124.38 provides that employees may use sick leave "upon approval of the responsible administrative officer of the employing unit." Moreover, the permissible grounds for sick leave enumerated in Section 124.38 are identical to those in Section 3319.141.

In *Ebert v. Stark Cty. Bd. of Mental Retardation*, 63 Ohio St.2d 31, 406 N.E.2d 1098 (Ohio 1980), upon which Plaintiff relies, the Defendant had a policy of sick leave benefits which was more generous than that prescribed by Section 124.38. The Defendant amended its sick leave policy to provide for only the amount of benefits specified in Section 124.38, and attempted to reduce its employees' accumulated sick leave to conform to the new formula for calculating the accumulation of such benefits. Upon Plaintiffs' challenge to Defendant's attempt to retroactively revoke their sick leave credits, the Supreme Court of Ohio held that "[t]he sick leave credits [under Section 124.38] once earned became a vested right of Plaintiffs." 63 Ohio St.2d at 34, 406 N.E.2d at 1100. It ruled accordingly that Defendant's new, skimpier sick leave policy could be applied only prospectively. *Id.*

In *State ex rel. Britton v. Scott*, 6 Ohio St.3d 268, 452 N.E.2d 1312 (Ohio 1983), relied upon by Defendant, university employees had made requests for paid sick leave from their employer, Ohio State University, indicating that they had been absent due to personal illness. The requests were disapproved by the university. The employees then brought an action in mandamus against the university and responsible officials. They argued not that the latter parties had abused their discretion in denying the requests for paid sick leave,

but rather that Defendants were without discretion under the applicable statute, Section 124.38 of the Ohio Revised Code, to deny a sick leave request which cited a permissible statutory ground for the granting of such leave. 6 Ohio St.3d at 270, 452 N.E.2d at 1313. Upon scrutiny of Section 124.38, the *Britton* court held that the statute impliedly vested the university and its officials with the discretion to approve or disapprove sick leave requests. Believing no clear legal duty to perform on the part of the university or its officials to have been established, the Supreme Court affirmed the lower courts' denial of the employees' action in mandamus. *Id.*

A municipal ordinance restricting the permissible grounds for sick leave set forth in Section 124.38 was the issue in *South Euclid Fraternal Order of Police v. D'Amico*, 13 Ohio App.3d 46, 468 N.E.2d 735 (Ohio Ct.App.1983). The ordinance in question permitted employees to take sick leave for injuries and illnesses occurring while on the job, but not for injuries and illnesses arising during employees' outside employment. The court noted that, under *Ebert*, Section 124.38 creates vested rights in sick leave. It also noted that those vested rights were not unlimited, but that sick leave could only be used for purposes outlined in the statute and that "[t]hese categories are quite specific and may not be expanded." 13 Ohio App.3d at 48, 468 N.E.2d 735. Recognizing the position of *Britton* that a sick leave request citing a permissible statutory ground did not rob an employer of the discretion to disapprove the request, the *South Euclid* court suggested that an employer no longer had discretion to deny a sick leave request once it was factually determined to comply with Section 124.38. 13 Ohio App. at 48, 468 N.E.2d 735. The challenged ordinance was accordingly struck down as unconstitutional due to its restriction of the rights granted in Section 124.38. *Id.*

---

ness, pregnancy, injury, exposure to contagious disease which could be communicated to other employees, and to illness, injury, or

death in the employee's immediate family. Unused sick leave shall be cumulative without limit.

These decisions indicate that while Section 3319.141, like Section 124.38, may create vested rights in sick leave, there nonetheless may be permissible limits placed upon the granting of such sick leave. The statute does not spell out a right to exhaust accumulated sick leave after ceasing active employment, nor does it seem to imply such a right, the whole premise of sick leave being an employee's eventual return to work after expiration of the permissible cause for absence.

While this line of analysis would appear to undercut Plaintiff's claim herein, Plaintiff in fact relies on two other provisions of the Ohio Revised Code to further develop his entitlement to exhaust his accumulated sick leave. The first of these provisions is Section 124.39, which provides in pertinent part:

> As used in this section, "retirement" means disability or service retirement under any state or municipal retirement system in this state.
>
> (B) ... [A]n employee of a political subdivision covered by section 124.38 or Section 3319.141 [3319.14.1] of the Revised Code *may elect*, at the time of retirement from active service with the political subdivision, and with ten or more years of service with the state, any political subdivisions, or any combination thereof, *to be paid in cash for one-fourth the value of his accrued but unused sick leave credit*. The payment shall be based on the employee's rate of pay at the time of retirement and eliminates all sick leave credit accrued but unused by the employee at the time payment is made. An employee may receive one or more payments under this division, but the aggregate value of accrued but unused sick leave credit that is paid shall not exceed, for all payments, the value of thirty days of accrued but unused sick leave. (emphasis added).

Both parties have in fact relied on different portions of Section 124.39 to support their proposed resolution of Plaintiff's attempt to exhaust his accumulated sick leave. It was Section 124.39's definition of "retirement" as including "disability or service retirement" which encouraged Defendant as to the permissibility of converting Plaintiff's accumulated sick leave into severance pay under Art. VI, Section 3 of the collective bargaining agreement. (Henry deposition, p. 45). Plaintiff, on the other hand, relies on the ambiguity inherent in Section 124.39(B)'s use of the verbal construction "may elect." In spelling out a formula for converting accumulated sick leave into severance pay, Section 124.39 does not explain what else a retiring employee "may elect" to do. Plaintiff's belief is that the statute creates the option for an employee to choose between exhaustion of accumulated sick leave and severance pay and that, in unilaterally attempting to convert his sick leave into severance pay, Defendant effectively terminated Plaintiff's employment without a hearing. (Doc. # 13; Ex. I).

Even assuming *arguendo* that Plaintiff's interpretation of Section 124.39 correctly reflects the intent of the Ohio legislature, the collective bargaining agreement, which governed Plaintiff and Defendant's relationship for the school year 1983–84, was believed by Defendant to authorize conversion of Plaintiff's accumulated sick leave into severance pay. As it includes no definition of "retirement," Art. VI, Section 3 of the collective bargaining agreement also requires interpretation before it can be said to cover an employee's *disability* retirement. This is not, however, the basis upon which Plaintiff attacks the utilization of this provision by Defendant. Rather, Plaintiff turns to a second state statute, Section 4117.10(A) of the Ohio Revised Code, to complete his argument as to his right to exhaust his accumulated sick leave.

Section 4117.10(A) provides in relevant part that:

> An agreement between a public employer and an exclusive representative entered into pursuant to Chapter 4117 of the Ohio Revised Code governs the wages, hours, and terms and conditions of public employment covered by the agreement

... [L]aws pertaining to civil rights, affirmative action, unemployment compensation, workers' compensation, the *retirement of public employees,* [and] residency requirements ... prevail over conflicting provisions of agreements between employee organizations and public employers.

(emphasis added). Plaintiff's position is that, under Section 4117.10(A), Section 124.-39 supersedes the collective bargaining agreement to the extent of any conflict, thus establishing his right to "elect" to exhaust his accumulated sick leave, even if the collective bargaining agreement authorizes conversion of employees' accumulated sick leave into severance pay. (Runyan deposition, p. 62).

In this Court's view, however, Section 4117.10(A) is not itself free from ambiguity. No Ohio court has yet evaluated the statute's substantive provisions as to the supremacy of state law over conflicting provisions of the collective bargaining agreements between public employers and their employees. Nor is it entirely clear whether or not Section 4117.10(A) could even be said to apply to the facts in the instant case. The Ohio legislature has specified that Section 4117.10(A) not be applied to any facts occurring before April 1, 1984. The collective bargaining agreement between Defendant and the Covington Education Association was negotiated before the start of the 1983–84 school year. Plaintiff applied for disability retirement in December, 1983. He terminated his teaching duties on March 30, 1984. The events concerning the attempted conversion of Plaintiff's sick leave into severance pay took place in April of 1984. As a result, there is at least some question as to whether Section 4117.10(A) can properly be invoked by Plaintiff.

As evinced by the foregoing discussion, the very existence of Plaintiff's property right in his accumulated sick leave rests upon several unresolved questions of state law, and with any supersession of state law, as claimed and interpreted by Plaintiff, of pertinent portions of Plaintiff's collective bargaining agreement. It remains, however, for this Court to ascertain the impact of Plaintiff's unsettled entitlement to his accumulated sick leave upon the propriety of this Court's involvement in his dispute with his former employer.

### B. *Abstention*

The "abstention doctrine" includes at least four distinguishable lines of cases which delineate those circumstances under which a federal court may decline to proceed with a particular case despite its ability to maintain jurisdiction over it. Wright, *Law of Federal Courts* § 52 (4th ed. 1983). Defendant has cited cases reflective of two strands of the abstention doctrine in its argument that this Court should abstain from the decision in this case and dismiss it without prejudice. *See Reetz v. Bozanich,* 397 U.S. 82, 90 S.Ct. 788, 25 L.Ed.2d 68 (1970) (citing *Railroad Commission v. Pullman Co.,* 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941); *Burford v. Sun Oil Company,* 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943). While this Court agrees that abstention is warranted under the rationale for abstention first outlined in *Pullman,*[5]

---

**5.** In *Burford v. Sun Oil Company,* 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943), the Supreme Court found that a complex state system for regulation of the oil industry involving administrative decision-making and judicial review should be allowed to function without interference from the federal courts. The key question in applying the *Burford* abstention doctrine is whether an erroneous federal court decision could impair the state's effort to implement its policy. *Ada-Cascade Watch Co. v. Cascade Resource Recovery,* 720 F.2d 897, 903 (6th Cir. 1983).

This Court has little difficulty in agreeing with Defendant that this case implicates an area of considerable importance to the state and to the statutorily-created STRS. The Court does have greater difficulty, however, with the additional requirement for abstention enunciated in *Burford,* namely, that a state-created forum exists with specialized competence in the particular area. *Ada-Cascade Watch Co.,* 720 F.2d at 903 (citing *Burford,* 319 U.S. at 327, 63 S.Ct. at 1104; and *Nasser v. City of Homewood,* 671 F.2d 432, 440 (11th Cir.1982). This requirement of a specialized state forum, as demonstrated in the latter-cited cases, appears to refer to administra-

this Court also believes that, as is customary under *Pullman,* the proceedings in this matter should be stayed (rather than dismissed) pending adjudication in the Ohio state courts. *Lake Carriers' Ass'n v. Mac-Mullan,* 406 U.S. 498, 92 S.Ct. 1749, 32 L.Ed.2d 257 (1972).

Under *Pullman,* abstention may be appropriate where the resolution of uncertain and ambiguous state law issues could moot a federal constitutional issue or cause it to be presented in a different posture. *Ada-Cascade Watch Co. v. Cascade Resource Recovery,* 720 F.2d 897, 903 (6th Cir.1983). Despite the numerous Ohio statutes involved in Plaintiff's argument as to his vested right in his accumulated sick leave, this Court recognizes that this degree of state law involvement alone would not warrant an invocation of *Pullman* abstention. Plaintiff's case, however, hinges upon his reading of the statutory ambiguity inherent in Ohio Rev.Code § 124.39 and its reference to the sick leave payment which a retiring employee "may elect." Without a finding that this statute establishes an employee's option to exhaust his accumulated sick leave, Plaintiff's argument, which embraces his position that the pertinent collective bargaining agreement is superseded by state statutes pertaining to retirement,

must crumble, in effect mooting his instant suit alleging a deprivation of property violative of the fourteenth amendment's guarantee of due process.

It appears that the state courts are open to hear Plaintiff's state law claim. The Ohio courts have demonstrated their willingness and their ability to engage in fact-finding under Section 3319.141 and, when appropriate, to compel the payment of sick leave to teachers bringing suit under that section. *Springfield Education Ass'n v. Springfield Local Bd. of Education,* 62 Ohio App.2d 184, 405 N.E.2d 727 (Ohio Ct.App.1977); *Zartman v. Bd. of Ed. of Lakota Local Sch. Dist.,* 33 Ohio Misc. 217, 293 N.E.2d 575 (Ohio Comm.Pl.1972), see *Schooley v. Bd. of Ed., Zanesville,* 50 Ohio St.2d 67, 362 N.E.2d 644 (Ohio 1977). It would appear that an action seeking a writ of mandamus, compelling Defendant to make a cash payment for Plaintiff's accumulated sick leave, would also lie. *See State ex rel. Ohio Ass'n of Public School Employees v. Kettering City Bd. of Ed.,* 48 Ohio St.2d 139, 357 N.E.2d 384 (Ohio 1976).[6]

The Court recognizes that, under Art. VIII, Section IV(2) of the collective bargaining agreement, a grievance is waived if not brought within fifteen days of the act upon which the grievance is based, and that

---

tive regulatory bodies and systems mandated by state statute, such as the system of state environmental licensing and approval found to warrant *Burford* abstention in *Ada Cascade Watch Co.* No such complex state system or state specialized forum exists in this case, nor does the Court believe that, at least in this Circuit, the courts of a particular state themselves qualify as the specialized state forum necessary for *Burford* abstention. Unlike *Pullman* abstention, discussed *infra,* the *Burford* doctrine of abstention generally requires dismissal of the federal suit to which it is believed applicable.

**6.** The Court notes that Section 4117.09 of the Ohio Revised Code, contained within the new Chapter 4117 on Public Employees Collective Bargaining cited by Plaintiff, *supra,* provides in relevant part:

(A) The parties to any collective bargaining agreement shall reduce the agreement to writing and both execute it.

(b) The agreement shall contain a provision that:

(1) Provides for a grievance procedure which may culminate with final and binding arbitration of unresolved grievances, and disputed interpretations of agreements, and which is valid and enforceable under its terms when entered into in accordance with Chapter 4117. of the Revised Code. No publication thereof is required to make it effective. A party to the agreement may bring suits for violation of agreements or the enforcement of an award by an arbitrator in the court of common pleas of any county wherein a party resides or transacts business.

At least one set of commentators appears to believe that this section permits suit by an individual employee whose grievance procedure does not require binding arbitration, or who alleges a wrong which is excluded from a grievance procedure which includes binding arbitration. F. Lewis and S. Spirm, Ohio Collective Bargaining Law § 4117.09 (1983).

Plaintiff herein never invoked the grievance procedure. While, under Ohio law, the doctrine of failure to exhaust such an administrative remedy may be a defense to an action in mandamus or an action for damages, it constitutes such a defense only if interposed and if a remedy exists which is effectual to afford the relief sought. *Kaufman v. Village of Newburgh Heights,* 26 Ohio St.2d 217, 271 N.E.2d 280 (Ohio 1971). It is difficult to conceive of the grievance procedure herein, under the unique facts of this case, as a relevant and effective framework of redress for Plaintiff, given that the crux of Plaintiff's argument is the irrelevance of the agreement due to the paramount authority of state statutes governing the sick leave entitlements of retired employees. Indeed, Art. VIII itself, which makes no provision for binding arbitration or the like, raises the question of whether an employee need invoke the grievance procedure at all prior to suit,[7] an interpretation which even Defendant, in its filings with this Court, fails to dispel.[8]

Favorable resolution in state court of the unsettled questions of Ohio law presented by Plaintiff's lawsuit may establish Plaintiff's property rights. In addition, such resolution is also likely to give Plaintiff precisely what he seeks, the ability to exhaust his accumulated sick leave as he wishes. Having found the standards enumerated for abstention under *Pullman* to have been met, the Court will stay the instant proceedings as is customary, and retain jurisdiction until, if and when, Plaintiff's federal claims need to be adjudicated.

## III. CONCLUSION

Having found that abstention is proper in this case, the Court hereby sustains that portion of Defendant's motion which urged that this Court abstain from considering the instant case. The balance of said motion, as well as Plaintiff's Motion for Summary Judgment, is not ruled upon.

Plaintiff's counsel is directed to notify this Court, at one hundred twenty day intervals, as to the progress of any state court litigation in order that this Court might determine when, if ever, this case may become viable once again. Obviously, should the state courts eschew jurisdiction, this Court should be notified.

---

**7.** The final paragraph of Art. VIII, Sec. V of the collective bargaining agreement provides as follows: "Such decisions by the Board of Education shall be final except under certain provisions of the Ohio Revised Code; *appeals and proper redress* may be sought through the courts, should the employee choose to do so." (emphasis added).

**8.** In its Reply Memorandum, Defendant states that "Plaintiff has conveniently overlooked the final sentence of Article VIII, Sec. V of the agreement between Covington Education Association and the Covington Board of Education which notes that in addition to the grievance procedure set out therein, the grievant may of course seek redress through the courts of Ohio." (Doc. # 37 at 4).