HOEFLINGER, APPELLANT, *v.* WEST CLERMONT LOCAL BOARD OF EDUCATION, APPELLEE.

146

(No. CA83-12-096—Decided
June 18, 1984.)

*Biegel, Kirkland & Berger* and
*James R. Kirkland,* for appellant.

*Ennis & Roberts* and *J. Michael Fischer,* for appellee.

*Per Curiam.* This cause came on to be heard upon an appeal from the Court of Common Pleas of Clermont County.

Joy Hoeflinger, appellant herein, began working as a business education teacher for appellee, West Clermont School District, in September 1974. She became pregnant during the 1980-1981 school year and, in a letter to Assistant Superintendent Vincent Gilley, dated February 12, 1981, she requested sick leave[1] commencing March 20, 1981. Attached to the letter was a statement from her doctor which read, "Pt. [*sic*] desires to stop employment on March 20, 1981." In her deposition, Hoeflinger suggested that she chose March 20 because the quarter ended at that date, and it would be easier for both her students and the substitute teacher if the change in teachers occurred at the beginning, rather than in the middle, of the next quarter.

Hoeflinger sent a second letter to Gilley, dated March 23, 1981, stating

[1] The term "sick leave" refers to paid leave while the term "maternity leave" refers to unpaid leave.

that she would begin extended sick leave on March 23, 1981, that she was under a doctor's care and that she would inform him of whether she intended to return to her position or request maternity leave after she was released from that care.

In a letter dated March 26, 1981, Gilley informed Hoeflinger that her request for sick leave would be denied unless she submitted "written verification" from her physician as to the "medical need" for her to be off work. In an April 7, 1981 letter to Hoeflinger, Superintendent Duane Tennant further informed her that she had three options. She could either take maternity leave without pay for the period she desired, or submit a doctor's statement that she was "unable" to work and take sick leave, or combine sick leave and maternity leave. For sick leave to be approved, Tennant stated that a doctor's statement as to "the period of disability and the nature of such" had to be submitted. Maternity leave would be approved by submitting a physician's statement indicating the anticipated date of delivery.

Appellant responded in a letter dated April 13, 1981, by stating that, based upon R.C. 3319.141 and 1975 Ohio Atty. Gen. Ops. No. 75-015, at 2-60, she felt that she was entitled to take sick leave due to pregnancy without submitting a detailed statement from her physician to further "justify" the use of sick leave.

Hoeflinger was not paid for the nineteen school days she did not work in the period from March 23, 1981, through April 26, 1981, and, on February 3, 1983, she initiated this action. After certain discovery procedures were utilized, appellee filed a motion for summary judgment on September 9, 1983, while appellant filed a motion for summary judgment on September 16, 1983. In a November 29, 1983 judgment entry, the trial court granted appellee's motion for summary judgment and denied ap-

pellant's motion. Hoeflinger thereafter timely invoked this court's jurisdiction to review the judgment below and now asserts a single assignment of error, to wit:

"The trial court erred in finding that a school board has the discretion, under Ohio R.C. 3319.141, to require proof of disability beyond the fact of pregnancy itself, in order to grant sick leave to a pregnant teacher."

## I

During the time period in question, the parties were bound by a contract negotiated between the West Clermont Education Association and the West Clermont Board of Education. While there is a section entitled "Sick Leave," the provision pertinent herein merely states that, "Sick leave shall be granted and administered in accordance with Section 3319.141 of the Ohio Revised Code." The remainder of this provision details the procedure for accumulating sick leave.

The contract provision relative to maternity leave is somewhat more specific, but no more illuminating. It provides that:

"Upon the expiration for sick leave for pregnancy, health leave without pay for the purpose of having a baby, the birth of a baby if no sick or health leave is requested or the adoption of a pre-school aged child five years or younger, a female teacher requesting a leave to remain home with her new child shall be granted a maternity leave without pay by the Board of Education."

R.C. 3319.141 provides that:

"Each person who is employed by any board of education in this state shall be entitled to fifteen days sick leave with pay, for each year under contract, which shall be credited at the rate of one and one-fourth days per month. *Teachers and nonteaching school employees, upon approval of the responsible administrative officer of the school district, may use sick leave for absence due to * * * pregnancy, * * *.* A board of education shall require a teacher or nonteaching school employee to furnish a written, signed statement on forms prescribed by such board to justify the use of sick leave. If medical attention is required, the employee's statement shall list the name and address of the attending physician and the dates when he was consulted. * * *" (Emphasis added.)

Appellee's argument is that the words, "* * * upon approval of the responsible administrative officer of the school district * * *" when read together with the board's broad authority to manage and control schools[2] and the board's power to make rules and regulations necessary to govern its employees,[3] authorize a board of education to require a physician's statement to justify the use of sick leave by a pregnant employee. We disagree.

As has been stated many times by Ohio courts, boards of education are creatures of statute and, as such, have only the powers authorized by statute. *Verberg v. Bd. of Edn.* (1939), 135 Ohio St. 246 [14 O.O. 87]. See, also, *State, ex rel. Locher,* v. *Menning* (1916), 95 Ohio St. 97. Though boards of education were created to secure a thorough and efficient system of schools throughout the state (Sections 2 and 3, Article VI, Ohio Constitution), where acts of a board contravene the power expressly granted by statute, such acts may be invalidated by the courts. *Verberg, supra.* See, also, *Perkins v. Bright* (1923), 109 Ohio St. 14; *State, ex rel. Clarke,* v. *Cook* (1921), 103 Ohio St. 465. Appellee correctly

---

[2] R.C. 3313.47 vests in the boards of education the management and control of the schools.

[3] R.C. 3313.20 provides that a board of education shall make such rules and regulations as are necessary for the government of its employees.

asserts that boards of education have further authority which may be implied from statutory grants of power. *Dayton Classroom Teachers Assn.* v. *Dayton Bd. of Edn.* (1975), 41 Ohio St. 2d 127 [70 O.O.2d 223]. However, in these circumstances, the legislative history of R.C. 3319.141 clearly sets the limit of the penumbra of the board's implied authority.

Before 1970, sick leave rights of all public employees, including teachers, were governed by R.C. 143.29 (now R.C. 124.38), which provided, at that time, that:

"* * * [T]he responsible administrative authority or personnel officer of the employing unit may require the employee to furnish a *satisfactory affidavit* * * *, *or a certificate from a licensed physician, as to the nature of his illness or other acceptable reason for his absence as provided in this section.* * * *" (Emphasis added.) See 132 Ohio Laws, Part I, at 164.

A 1969 opinion by the Attorney General interpreted the term "satisfactory affidavit" to require a "* * * written or printed statement under oath administered by a notary public * * * containing sufficient facts so that the appointing authority is satisfied that the use of sick leave is justified." 1969 Ohio Atty. Gen. Ops. No. 69-164, at 2-342.

In 1970, just one year later, the legislature amended R.C. 143.29 (see 133 Ohio Laws, Part III, at 2884) and added R.C. 3319.141. As to state employees *not* covered by R.C. 3319.141, amended R.C. 143.29 provided, in part, that the appointing authority shall require an employee to provide a "* * * satisfactory written, signed statement

* * *" to justify the use of sick leave. If medical attention was required, "* * * a *certificate stating the nature of the illness from a licensed physician * * *"* was required by the statute to justify sick leave. (Emphasis added.) R.C. 143.29 was renumbered as R.C. 124.38 in 1973, and, as last amended in 1982, still requires a certificate from a licensed physician stating the nature of the illness to justify sick leave for state employees not covered by R.C. 3319.141 where medical attention is required.

R.C. 3319.141 was enacted in 1970 in Amended H.B. No. 1008 together with the amendments to R.C. 143.29. It then provided, as it does today, that the board of education shall require a written, signed "statement" from the teacher on a form prescribed by the board in order to justify sick leave.[4] If medical attention is required, the teacher must list merely "* * * the name and address of the attending physician and the dates when he was consulted."

The question is one of legislative intent. What did the legislature intend when drafting R.C. 3319.141 as to scope of a board of education's power to require a doctor's statement as to the medical necessity of a teacher's requested sick leave? As the history of this statute clearly shows, the legislature, at one time, required a teacher to submit a physician's *affidavit* to justify sick leave and still requires a "certificate" from a physician stating the nature of the illness in order to justify sick leave for those not covered by R.C. 3319.141. For those governed by R.C. 3319.141, all that must be submitted to justify sick leave is a teacher's "written, signed

---

[4] Appellee has presented no form prescribed by it which teachers may use to justify sick leave. Rather, appellee relies upon an unwritten "practice" in the system which has never been formally adopted as a rule or regulation and which is not included in the collective bargaining agreement. Pursuant to this "practice," a pregnant school teacher is automatically entitled to sick leave for the period from two weeks before the expected due date until six weeks after the due date.

statement." Where medical attention is required, the teacher need only list the *name* and *address* of his or her doctor and the dates of consultation.

Given the nature of the legislative history, it is clear that this portion of R.C. 3319.141 delineates the scope of the board's authority. We must conclude that it was the intent of the legislature that a board of education is not to have the power to require a teacher to provide a doctor's statement as to the necessity of sick leave. See 1975 Atty. Gen. Ops. No. 75-015, at 2-60. Had the legislature intended to give the board of education the power to require a doctor's "excuse" to justify a sick leave, it clearly would have specifically done so, as it did in R.C. 143.29 and as it does today in R.C. 124.38.

Appellee further argues that the case of *State, ex. rel. Britton,* v. *Scott* (1983), 6 Ohio St. 3d 268, is dispositive of this case. In *Britton,* classified employees of the Ohio State University sought a writ of mandamus when their requests for paid sick leave, pursuant to R.C. 124.38, for absences from work due to personal illness, were disapproved. The Supreme Court upheld the denial of the writ by the court of appeals because it viewed the action taken by the university as discretionary. As such, the court found that there was no "clear legal duty" on the part of the university to act and that mandamus would not lie. Appellee argues that since a portion of R.C. 124.38 is similar to a portion of R.C. 3319.141, *Britton* should be read as providing boards of education with the discretion to demand a detailed statement from a pregnant teacher's physician as to the medical necessity of her requested sick leave.

As we stated above, relevant portions of R.C. 124.38 and 3319.141 are *not* similar. Each evolved from a statute requiring a doctor's *affidavit* to justify sick leave, and each details the appropriate level of documentation required to justify sick leave today. *Britton* was based on R.C. 124.38, which requires employees not covered by R.C. 3319.141 to submit a certificate from their physician to justify sick leave where medical attention is not required. *Britton* is not applicable to the issues raised by the case at bar.[5]

Accordingly, appellant's sole assignment of error is sustained.

The assignment of error properly before this court having been ruled upon as heretofore set forth, it is the order of this court that the judgment or final order herein appealed from be, and the same hereby is, reversed and remanded for further proceedings not inconsistent with this decision.

*Judgment reversed and cause remanded.*

HENDRICKSON, P.J., KOEHLER and JONES, JJ., concur.

HENDRICKSON, P.J., concurring. There is, of course, no question that the school administrative officer has the discretion pursuant to the provisions of R.C. 3319.141 either to grant, or to refuse the request for the use of sick leave for pregnancy, but R.C. 3319.141 gives no authority for the administrative officer to require a statement from the employee's physician before acting upon that request. Consequently, the denial of sick leave to appellant upon the basis that she failed to furnish such a statement is contrary to the express provisions of the statute. Therefore, since the

---

[5] We would further note that the court in *Britton* did not address the issue of whether the university abused its discretion in denying the requests for paid sick leave because the employees neither alleged an abuse of discretion in their complaint nor argued that such occurred before the court. *Britton, supra,* at 270.

record discloses no other reason for the denial of the use of sick leave for pregnancy, the judgment must be reversed.

JONES, J., concurring. I concur in the finding that Hoeflinger is entitled to utilize accumulated sick leave for pregnancy. When such accumulated sick leave has been fully used, she can take maternity leave without pay. This case presents a narrow issue. Can a teacher take sick leave for mere pregnancy, or must the pregnancy be complicated by illness? The assignment of error does not require us to consider the manner in which proof of pregnancy is presented, whether by letter from a physician or simply a statement from the employee. Having determined that R.C. 3319.141 permits an employee to claim and receive sick leave for pregnancy, it is unnecessary to further construe the statute as to the mechanical procedure. I also take exception to the views expressed by Judge Hendrickson in his separate concurring opinion, which indicates a school administrator has discretion to either grant or refuse a request for sick leave due to pregnancy. It seems to me that such administrator has no discretion once the fact of pregnancy is established.