THE STATE, EX REL. RUNYAN, *v.* HENRY ET AL.

24

(No. 85CA24—Decided
September 5, 1986.)

*Stephen D. Martin,* for relator.
*James Burnes,* for respondents.
*Anthony J. Celebrezze, Jr.,* attorney general, and *Richard A. Green,* for *amicus curiae* State Teachers Retirement System.

WILSON, J. Relator, Dwane I. Runyan, was a teacher in the Covington Exempted Village School District. Relator filed this original action in mandamus against the Board of Education of the Covington Exempted Village School District, its superintendent, and its treasurer, seeking a writ to compel salary payment for the use of accrued unused sick leave.

Relator began teaching in the Covington Exempted Village School District in 1957 and continued employment under his last written contract for five years, school years 1980-1981 through 1984-1985. Due to hearing loss, relator submitted a disability retirement application to the State Teachers Retirement System ("STRS") on or about December 27, 1983. On or about March 20, 1984, relator and his superintendent, Larry Henry, each received a copy of a letter from STRS which indicated that approval of the disability application would be recommended to the board and requested the dates of the last day of teaching and of sick leave. The letter indicated that relator would have to terminate teaching by March 30, 1984 if he wished his application to be processed.

On or about March 20, 1984, relator and Henry met to discuss the letter. It was agreed that relator's last day of teaching would be March 30, 1984 and that from March 20 to March 30 he would teach from books in a classroom situation rather than with the machinery in the shop. Relator inquired about the exact number of accrued sick leave days and was told that he had 194.5 days remaining. Relator calculated his dates and wrote to STRS that his last teaching day was to be March 30, 1984 and his last sick leave day would be May 13, 1985.

Relator and his superintendent each received a copy of a letter from STRS stating that the application for disability retirement and recommendation for approval would be presented to the State Teachers Retirement Board on May 17, 1985 and that health coverage would be effective June 1, 1985. Respondents decided to convert relator's accrued sick leave into severance pay and informed STRS of this on April 12, 1984. On April 13, 1984, relator attempted to obtain his regular paycheck but instead took a check for severance pay and a prorated salary check for work performed during the school year but paid on a twelve-month basis. Relator did not cash the checks but returned them upon seeking legal advice. On or about April 23, 1984, relator submitted a sick leave affidavit and a demand for a hearing. Respondents refused his request.

Around April 14 to 16, relator received a letter from STRS stating that it had been informed that his teaching or sick leave status terminated in March 1984; that his disability retirement application with recommendations for approval would be presented to the retirement board on May 18, 1984; and that health care coverage would start June 1, 1984. In April 1984, relator's attorney asked STRS not to act upon relator's disability retirement application until a judicial determination could be made concerning relator's ability to exhaust sick leave as requested. Nevertheless, STRS did approve relator's application and sent the first benefit check (in June 1984 for effective date April 1, 1984)

which was refused. No further action was taken until May 1985 when relator's disability retirement benefits commenced, effective May 1, 1985.

The key question presented is whether relator has a right to exhaust his accrued unused sick leave before taking disability retirement.

R.C. 3319.141 provides for sick leave as follows:

"Each person who is employed by any board of education in this state shall be entitled to fifteen days sick leave with pay, for each year under contract, which shall be credited at the rate of one and one-fourth days per month. Teachers and nonteaching school employees, upon approval of the responsible administrative officer of the school district, may use sick leave for absence due to personal illness, pregnancy, injury, exposure to contagious disease which could be communicated to others, and for absence due to illness, injury, or death in the employee's immediate family. Unused sick leave shall be cumulative up to one hundred twenty work days, unless more than one hundred twenty days are approved by the employing board of education. * * *"

Sick leave credits once earned become a vested right. *Ebert* v. *Bd. of Mental Retardation* (1980), 63 Ohio St. 2d 31, 17 O.O. 3d 19, 406 N.E. 2d 1098 (construing R.C. 124.38). An employee earns sick leave, accumulates it, and may elect to use it only for the enumerated purposes. Final approval on the use of sick leave rests with the school. Generally, if a person is, in fact, using available sick leave for one of the stated purposes, sick leave will be approved.

Respondents argue that they were compelled to convert relator's sick leave into severance pay under the collective bargaining agreement between the Covington Education Association and the Covington Board of Education which states in relevant part:

"Employees with five or more years of service to the Board of Education at the time of their retirement from the Covington Schools or death while an employee of the Covington Schools, shall receive payment based on the employee's rate of pay at retirement or death for one-fourth of the employee's accrued but unused sick leave up to a maximum of forty (40) days. In case of retirement, such payment shall not be made at the time of an employee's resignation. Such payment shall not be made until the employee officially retires and has an application for retirement approved by the State Teachers Retirement System or the Ohio School Employees Retirement System. Payment will not be made while the employee is still receiving regular paychecks. Conversion of sick leave upon retirement shall eliminate all sick leave credit accrued by the employee. In the event of death, while an employee, payment will not be made until a certified copy of the death certificate is filed in the Board of Education Office. Payment will be made to the predetermined beneficiary or the employee's estate."

Respondents claim that the collective bargaining agreement prevails over any statutory provision to the contrary under R.C. 4117.10. Section 3 of Am. Sub. S.B. No. 133 (140 Ohio Laws, Part I, 336, 367) provides:

"Sections 4, 5, 6, 7, and 8 of this act and section 4117.02 of the Revised Code as enacted by this act shall take effect on the effective date of this act. Section 4117.10 of the Revised Code, as enacted by this act, shall take effect on the effective date of this act; however, divisions (A), (B), and (C) of that section shall not be applied to any facts occurring before April 1, 1984. Sections 124.02, 124.03, 124.05, and 124.08 of the Revised Code as amended by this act shall take effect sixty days after the effective date of this act.

All other portions of this act shall take effect on April 1, 1984.''

Here, the facts occurred before April 1, 1984 making R.C. 4117.10 inapplicable. Therefore, a collective bargaining agreement between a board and its employees is valid as long as it does not conflict with statutory law. See *Struthers City Schools Bd. of Edn. v. Struthers Edn. Assn.* (1983), 6 Ohio St. 3d 308, 6 OBR 368, 453 N.E. 2d 613.

Payment for unused sick leave upon retirement is provided in R.C. 124.39 which reads:

"As used in this section, 'retirement' means disability or service retirement under any state or municipal retirement system in this state.

"*  *  *

"(B) Except as provided in division (C) of this section, an employee of a political subdivision covered by section 124.38 or 3319.141 of the Revised Code *may elect,* at the time of retirement from active service with the political subdivision, and with ten or more years of service with the state, any political subdivisions, or any combination thereof, to be paid in cash for one-fourth the value of his accrued but unused sick leave credit. The payment shall be based on the employee's rate of pay at the time of retirement and eliminates all sick leave credit accrued but unused by the employee at the time payment is made. An employee may receive one or more payments under this division, but the aggregate value of accrued but unused sick leave credit that is paid shall not exceed, for all payments, the value of thirty days of accrued but unused sick leave.

"(C) A political subdivision may adopt a policy allowing an employee to receive payment for more than one-fourth the value of his unused sick leave or for more than the aggregate value of thirty days of his unused sick leave, or allowing the number of years of service to be less than ten. The political subdivision may also adopt a policy permitting an employee to receive payment upon a termination of employment other than retirement or permitting more than one payment to any employee. *  *  *'' (Emphasis added.)

Thus, it is the employee's option to receive cash payment for a percentage of accrued sick leave upon retirement.

Respondents argue that relator waived his right to continued employment by applying for disability retirement. This does not comport with the statutory provisions, R.C. 3307.42 through 3307.44, setting up this disability retirement system. R.C. 3307.42 provides that a member of the State Teachers Retirement System (or his representative or employer) may apply for disability retirement if the member has at least five years' service credit and is younger than sixty years of age. If a medical examination reveals that the member is medically or physically incapacitated for the performance of his teaching duties by a disabling condition, either permanent or presumed to be permanent for twelve continuous months, disability retirement will be approved and shall begin on the first day of the month following the later of the last day for which compensation was paid or the attainment of benefits. R.C. 3307.44 provides in relevant part:

"A disability retirant, notwithstanding section 3319.13 of the Revised Code, shall retain membership in the state teachers retirement system and shall be considered on leave of absence from his position during his first five years on the retired list. The state teachers retirement board may require any disability retirant to submit at any time to a medical examination by a physician selected by the board. After the examination, the examiner shall report and certify to the board

whether the retirant is physically and mentally capable of resuming service similar to that from which he was retired. If the board concurs in a report by the examining physician that the disability retirant is capable of resuming service similar to that from which he was retired, the payment of disability retirement benefit shall be terminated not later than the following thirty-first day of August or upon employment as a teacher prior thereto. If the leave of absence has not expired, the board shall so certify to his last employer before retirement that the retirant is capable of resuming service, and if the retirant was under contract at the time he was retired, the employer by the first day of the next succeeding year shall restore the retirant to his previous position and salary or to a position and salary similar thereto. The disability benefit shall terminate if the disability retirant becomes employed as a teacher. If any disability retirant refuses to submit to a medical examination, his retirement benefit shall be discontinued until his withdrawal of such refusal, and if the refusal continues for one year, all his rights in and to the retirement benefit shall be forfeited.

"The board may adopt rules requiring each disability retirant to file an annual statement of earnings and current medical information on his condition.

"A disability benefit also may be terminated by the board at the request of the disability retirant."

A teacher may elect when, within limits, to apply for disability retirement if he is mentally or physically disabled. Disability retirement benefits will not begin until remuneration ceases. During the first five years of disability retirement, a member is considered on leave of absence and retains rights and benefits of employment including the right to return to the previous position should he or she be able to do so (provided an effective contract existed at the time of retirement). By leave of absence, a person is not separated from employment. He retains all rights and obligations of employment but his actual performance of duties and compensation are suspended during the leave of absence. *State, ex rel. Cutright,* v. *Akron Civil Service Comm.* (1953), 95 Ohio App. 385, 53 O.O. 409, 120 N.E. 2d 127.

Thus, application for and receipt of disability benefits, without more, does not waive the right to continued employment.

The remaining issue is whether mandamus is the appropriate remedy. The Ohio Supreme Court has held consistently that a claim by a public employee of entitlement to wages or benefits which are granted by statute or ordinance is actionable in mandamus. *State, ex rel. Gingrich,* v. *Fairfield City Bd. of Edn.* (1985), 18 Ohio St. 3d 244, 18 OBR 300, 480 N.E. 2d 485.

A writ of mandamus will not issue where there is a plain and adequate remedy in the ordinary course of law. Respondents argue that relator failed to exhaust administrative remedies which would have provided him with a plain and adequate remedy at law. Article VIII of the collective bargaining agreement provides for a grievance procedure. Relator did not avail himself of this grievance procedure.

Respondents rely upon the case of *Republic Steel Corp.* v. *Maddox* (1965), 379 U.S. 650, to support their position. In that case, the Supreme Court of the United States ruled that an employee must implement contract grievance procedures for redress. That grievance procedure consisted of three steps followed by the final step of binding arbitration. In the case *sub judice* the grievance procedure does not provide for arbitration but only provides the

right to present a grievance before the immediate supervisor, the superintendent, and the board.

In *State, ex rel. Merydith Constr. Co.,* v. *Dean* (1916), 95 Ohio St. 108, 123, 116 N.E. 37, 41, the Ohio Supreme Court defined adequate remedy as "one complete in its nature, beneficial and speedy." The grievance procedure provided in the collective bargaining agreement is not a complete remedy and in this case would not be beneficial. Therefore, it is not a plain and adequate remedy at law.

Another prerequisite to the issuance of the extraordinary writ of mandamus is that relator establish that he has a clear legal right thereto. We have decided that relator was entitled to use his accrued sick leave for one of the purposes enumerated in the statute. If relator was, in fact, attempting to use his sick leave for a proper purpose, then he has a clear legal right to the requested relief. Respondents have admitted that, in March 1984, they thought that they had two alternatives. One alternative was to grant relator all of his accrued sick leave and the other alternative was to place relator on an unpaid leave of absence. If respondents believed that they could choose to grant relator's sick leave request, then they must have determined that relator was attempting to use sick leave for a proper purpose. This conclusion is supported by the fact that respondents do not argue that relator did not medically qualify for sick leave.

Accordingly, as prayed for in the complaint, respondents are ordered to approve relator's request for use of accumulated sick leave and to pay him the salary due.

The writ is allowed.

*Writ allowed.*

KERNS and WOLFF, JJ., concur.