HANNAN, APPELLANT, *v.* CHESAPEAKE UNION EXEMPTED VILLAGE SCHOOL DISTRICT BOARD OF EDUCATION, APPELLEE.

(No. 1842—Decided April 15, 1988.)

Mark A. Foley and Michael H. Hunter, for appellant.

Frank McCown, for appellee.

GREY, P.J. This is an appeal from a judgment of the Lawrence County Court of Common Pleas directing a verdict for appellee, the Chesapeake Union Exempted Village School District Board of Education. We reverse.

The record reveals the following facts. For several years, Tommie Hannan was a teacher for the defendant board. Hannan, age thirty-seven, became pregnant, giving birth to her third child on October 16, 1984. Prior to the birth of the child, Hannan used no sick leave. Because of her age and the colicky nature of her newborn child, Hannan applied to use her accumulated sick leave beyond the customary six-week period.

On November 30, 1984, Dan Russell, Superintendent of the School District, sent a letter to Hannan stating that Hannan would need a doctor's statement if she planned to continue to draw sick leave. Hannan contacted her obstetrician, Dr. Humphrey, and asked that such a letter be sent to Russell. Dr. Humphrey ordered his nurse to sign Humphrey's name to a letter stating that Hannan could return to work on January 14, 1985. Russell later called Hannan stating that Dr. Humphrey had not signed the above-described letter.

On January 11, 1985, Hannan received a paycheck in the amount of $12.15. This was the first indication that Hannan had been denied sick leave. This disapproval was contrary to the board's official policy which required teachers to fill out their sick leave forms on their first day back to work. After the submission of the sick leave form, a decision approving or disapproving the teacher's sick leave was made. Hannan's January 11, 1985 paycheck indicated that a decision to deny her sick leave benefits had been made prior to Hannan's execution and submission of her sick leave form.

Hannan subsequently obtained and submitted two more physician's statements to the board. Despite Hannan's compliance with the established requirements under the board's sick leave policy, Hannan's sick leave from November 27, 1984 to January 14, 1985 was denied.

Hannan filed a complaint against the board to recover the denied sick leave benefits. After the presentation of the evidence, both parties moved for a directed verdict. Judge W. Richard Walton directed a verdict for the board and dismissed the jury. Hannan appeals and assigns five errors. To avoid unnecessary repetition we will treat those assignments of error jointly.

"FIRST ASSIGNMENT OF ERROR:

"The court below erred in directing a verdict where the evidence was such that reasonable minds could come to more than one conclusion as to the date of the R.C. 3319.141 'responsible' administrative officer's decision to terminate sick leave."

"SECOND ASSIGNMENT OF ERROR:

"The court below erred in failing to direct its verdict for plaintiff where the denial of sick pay benefits was based upon the failure of plaintiff to supply a doctor's notice satisfactory to the defendant where such a demand by the defendant was unlawful as a condition precedent to the receipt of sick pay benefits."

"THIRD ASSIGNMENT OF ERROR:

"The court below erred in granting defendant's motion for directed ver-

dict and in determining that the only conclusion to which a reasonable person could arrive was that the Board's sick leave policy was administered uniformly."

"FOURTH ASSIGNMENT OF ERROR:

"Even if the Board had any discretion in denying Hannan the use of her sick leave benefits, the court below erred in granting the Board's motion for a directed verdict and in failing to grant Hannan's motion for a directed verdict because that discretion was clearly abused."

"FIFTH ASSIGNMENT OF ERROR:

"The court below erred in granting a directed verdict relying on Dr. Humphrey's personal opinion while ignoring his professional medical opinion."

Hannan's five assignments of error simply assert that the trial court erred in directing a verdict in favor of the board. We agree.

R.C. 3319.141 provides in pertinent part:

"Each person who is employed by any board of education in this state *shall be entitled* to fifteen days sick leave with pay, for each year under contract, which shall be credited at the rate of one and one-fourth days per month. Teachers and non-teaching school employees, upon approval of the responsible administrative officer of the school district, *may use sick leave for absence due to* personal illness, *pregnancy,* injury, exposure to contagious disease which could be communicated to others, and for absence due to illness, injury, or death in the employee's immediate family. * * *" (Emphasis added.)

The language of the statute is clear. An employee of a board of education is entitled to fifteen days of sick leave per year, accumulated at the rate of one and one quarter days per month. Teachers are specifically permitted to use that sick leave for pregnancy purposes.

The board contends that the statute authorizes the board to approve or disapprove the use of a teacher's sick leave. This is essentially correct. However, the board has couched its arguments in terms of it, the board, "granting" sick leave to an individual. A board does not "grant" pregnancy or sick leave.

Sick leave credits once earned become a vested right. *Ebert* v. *Bd. of Mental Retardation* (1980), 63 Ohio St. 2d 31, 17 O.O. 3d 19, 406 N.E. 1098; *State, ex rel. Runyan,* v. *Henry* (1986), 34 Ohio App. 3d 23, 516 N.E. 2d 1261; and *South Euclid Fraternal Order of Police* v. *D'Amico* (1983), 13 Ohio App. 3d 46, 13 OBR 49, 468 N.E. 2d 735. In *Runyan, supra,* the Second District Court of Appeals stated:

"* * * An employee earns sick leave, accumulates it, and may elect to use it only for the enumerated purposes. Final approval on the use of sick leave rests with the school. *Generally, if a person is, in fact, using available sick leave for one of the stated purposes, sick leave will be approved."* (Emphasis added.) *Id.* at 25, 516 N.E. 2d at 1263.

There appears to be some confusion about the language in R.C. 3319.141, "* * * upon *approval* of the responsible administrative officer of the school district * * *." Appellee contends that "approval" as used in the statute is discretionary, that is, that the board has the authority to "grant" or "deny" an application for sick leave.

In *State, ex rel. Britton,* v. *Scott* (1983), 6 Ohio St. 3d 268, 6 OBR 334, 452 N.E. 2d 1312, the Ohio Supreme Court rejected the idea that whenever an employee applied for sick leave the employing agency was required to pay it. In rejecting the claim for mandamus relief, the court held, at 270, 6 OBR at 335, 452 N.E. 2d at 1313:

"Appellants' complaint did not allege, nor do they argue herein, that appellees abused their discretion in denying appellants' requests for paid sick leave. Rather, they argue that appellees are without discretion to deny paid sick leave once a request has been made citing one of the permissible reasons enumerated in R.C. 124.38. This argument is without merit. R.C. 124.38 impliedly vests appellees with the discretion to approve or disapprove requests for paid sick leave. Thus, appellants have failed to demonstrate a clear legal duty on the part of appellees to perform the requested act herein."

If under *Ebert, supra,* sick leave is a vested right, and under *Britton, supra,* the agency is to approve or disapprove a request for sick leave, there appears to be a contradiction. A vested right cannot depend on the power to grant or deny it. In *South Euclid F.O.P., supra,* it was said, at 48, 13 OBR at 51-52, 468 N.E. 2d at 738:

"This vested right is not unlimited. It may be used only for those purposes stated in the statute, *i.e.,* illness, pregnancy, injury, exposure to a contagious disease, or death, injury or illness in the family. These categories are quite specific and may not be expanded. See, *e.g.,* 1981 Ohio Atty. Gen. Ops. No. 81-015, at 2-55 * * *.

"While the employing unit has the right to grant or deny sick leave, it does have the duty to see to it that sick leave is used only as allowed by law. * * *

"While the city may set standards for determining when sick leave is properly used, it may not modify, amend or abridge the rights granted in the statute. * * *"

The board's authority and decision-making procedure thus are limited to a determination of whether the application for sick leave is for one of the purposes listed in the statute. This position was summarized in *Runyan* v. *Bd. of Edn. of Covington Exempted Village School Dist.* (S.D. Ohio 1985), 614 F. Supp. 625, 630:

"* * * Recognizing the position of *Britton* that a sick leave request citing a permissible statutory ground did not rob an employer of the discretion to disapprove the request, the *South Euclid* court suggested that an employer no longer had discretion to deny a sick leave request once it was factually determined to comply with Section 124.38. 13 Ohio App. [3d] at 48, 468 N.E. 2d 735."

The United States District Court in *Runyan, supra,* reserved jurisdiction on the federal claim until Runyan's claim under R.C. 3319.141 could be resolved in the Ohio courts. The Ohio courts did resolve Runyan's case in *State, ex rel. Runyan,* v. *Henry,* cited above, which is a mandamus action. Runyan attempted to use up his accumulated sick leave before going on State Teachers Retirement System disability. The Ohio *Runyan* court held:

"Another prerequisite to the issuance of the extraordinary writ of mandamus is that relator establish that he has a clear legal right thereto. We have decided that relator was entitled to use his accrued sick leave for one of the purposes enumerated in the statute. If relator was, *in fact,* attempting to use his sick leave for a proper purpose, then he has a clear legal right to the requested relief. * * *" (Emphasis added.) *Id.* at 28, 516 N.E. 2d at 1265.

Obviously, it was error for the trial court to have directed a verdict when the sole issue was whether Hannan was using her sick leave for one of the purposes listed in R.C. 3319.141, which includes pregnancy.

Here, there was ample evidence presented that the sick leave Hannan wished to use during the period of time

between November 27, 1984 and January 14, 1985 was legitimately accumulated and vested under R.C. 3319.141.

Dan Russell denied Hannan's use of sick leave because he viewed it as an abuse of sick leave. It is clear from the evidence that Russell did not believe Hannan's assertions that she was not able to return to work after the six-week period. But Russell has no authority to make such a determination.

In *Hoeflinger* v. *West Clermont Local Bd. of Edn.* (1984), 17 Ohio App. 3d 145, 17 OBR 245, 478 N.E. 2d 251, the Clermont County Court of Appeals held that it was not the intent of the legislature in enacting R.C. 3319.141 to require a teacher to provide a doctor's statement to justify sick leave. The *Hoeflinger* case is remarkably like this one. Joy Hoeflinger, a teacher, applied for pregnancy sick leave which was denied because she failed to prove disability beyond the fact of pregnancy itself.

"A school administrative officer has the discretion pursuant to the provisions of R.C. 3319.141 either to grant or to refuse a request for the use of sick leave for pregnancy, but R.C. 3319.141 gives no authority for the administrative officer to require a statement from the employee's physician before acting upon that request. Therefore, the denial of sick leave to a pregnant school teacher upon the basis that she failed to furnish such a statement is contrary to the express provisions of the statute." *Id.* at syllabus.

Here, despite the submission of three doctor's statements, virtually agreeing that Hannan should not have returned to work until January 14, 1985, Russell denied Hannan's use of sick leave. While is is true that Russell did not directly require Hannan to furnish two of the three statements, his actions indicate that he indirectly required such statements. Russell conceded Hannan's pregnancy but demanded proof of Hannan's incapacity. "The standard for 'abuse of discretion' is readily defined, albeit broadly, as more than an error of law or judgment, but implies an attitude * * * that is unreasonable, arbitrary or unconscionable." *Ojalvo* v. *Bd. of Trustees of Ohio State Univ.* (1984), 12 Ohio St. 3d 230, 232, 12 OBR 313, 315, 466 N.E. 2d 875, 877. Russell clearly abused his discretion to approve or disapprove a teacher's sick leave, in disapproving Hannan's sick leave.

The trial court erred by directing a verdict for the board because reasonable minds could have come to only one conclusion on Hannan's pregnancy and the validity of her use of her accumulated sick leave. The conclusion is that Hannan was pregnant and entitled to use her sick leave as a matter of law pursuant to R.C. 3319.141.

Hannan's assignments of error are well-taken and are sustained.

Pursuant to Appellate Rule 12(B), the trial court's judgment is reversed and the cause is remanded with an order to enter judgment in favor of appellant, Tommie Hannan.

*Judgment reversed and cause remanded.*

ABELE, J., concurs.

STEPHENSON, J., concurs in part and dissents in part.

STEPHENSON, J., concurring in part and dissenting in part. I concur in the judgment and opinion reversing the judgment of the trial court which directed a verdict in favor of appellee, but I respectfully dissent from that portion of the judgment and opinion entering final judgment pursuant to App. R. 12(B) in favor of appellant. In

effect, the majority opinion holds that the trial court erred in failing to grant appellant's motion for a directed verdict where there was "ample evidence" that the sick leave was vested and utilized for a proper purpose and where Superintendent Dan Russell demanded proof of appellant's incapacity.

Civ. R. 50(A)(4) provides as follows:

"When a motion for a directed verdict has been properly made, and the trial court, after construing the evidence most strongly in favor of the party against whom the motion is directed, finds that upon any determinative issue reasonable minds could come to but one conclusion upon the evidence submitted and that conclusion is adverse to such party, the court shall sustain the motion and direct a verdict for the moving party as to that issue."

If all the evidence relating to an essential issue is sufficient to permit only a conclusion by reasonable minds against a party, after construing the evidence most favorably to that party, it is the duty of the trial court to instruct a finding or direct a verdict on that issue against that party. *Grau* v. *Kleinschmidt* (1987), 31 Ohio St. 3d 84, 90, 31 OBR 250, 255, 509 N.E. 2d 399, 404; *Hamden Lodge* v. *Ohio Fuel Gas Co.* (1934), 127 Ohio St. 469, 189 N.E. 246. The trial court must not consider the weight of the evidence or the credibility of the witnesses when ruling upon a motion for a directed verdict. *TLT-Babcock, Inc.* v. *Service Bolt & Nut Co.* (1984), 16 Ohio App. 3d 142, 143, 16 OBR 149, 151, 474 N.E. 2d 1223, 1225.

R.C. 3319.141 provides, in pertinent part, as follows:

"Each person who is employed by any board of education in this state *shall be entitled* to fifteen days sick leave with pay, for each year under contract, which shall be credited at the rate of one and one-fourth days per month. Teachers and non-teaching school employees, *upon approval of the responsible administrative officer of the school district,* may use sick leave for absence due to * * * pregnancy * * *." (Emphasis added.)

A school administrative officer has the discretion pursuant to the provisions of R.C. 3319.141 either to grant or to refuse a request for the use of sick leave for pregnancy. *Hoeflinger* v. *West Clermont Local Bd. of Edn.* (1984), 17 Ohio App. 3d 145, 17 OBR 245, 478 N.E. 2d 251. The school administrator has discretion to deny the use of sick leave if it is determined that such use is not for a proper statutory purpose. Cf. *State, ex rel. Runyan,* v. *Henry* (1986), 34 Ohio App. 3d 23, 25, 516 N.E. 2d 1261, 1263. The school administrator herein was Superintendent Russell.

The dispositive issue with regard to whether the trial court erred in failing to direct a verdict in favor of appellant is thus whether Superintendent Russell abused his discretion in denying appellant credit for sick leave by determining that it was not being utilized for the proper stated statutory purpose herein, *i.e.,* pregnancy. The term "abuse of discretion" connotes more than an error of law or of judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable. *Beacon Journal Publishing Co.* v. *Stow* (1986), 25 Ohio St. 3d 347, 349, 25 OBR 399, 401, 496 N.E. 2d 908, 910; *Joseph J. Freed & Associates* v. *Cassinelli Apparel Corp.* (1986), 23 Ohio St. 3d 94, 97, 23 OBR 255, 257, 491 N.E. 2d 1109, 1112.

In the case at bar, Superintendent Russell testified that the usual and accepted period of recovery for childbirth is six weeks, that he took appellant off the payroll on November 27, 1984, after he had several conversations with her, that appellant had told him

that she was thirty-seven years old and "didn't feel" like coming back to work, and that it had been school district policy to deny sick leave benefits for time beyond six weeks after birth, absent evidence of complications resulting therefrom. Dr. Humphrey testified that appellant was able to return to work in the normal six-week period in that he felt that she had no medical or obstetrical complications from her delivery. Dr. Humphrey further testified that at the November 27, 1984 examination, he felt that appellant seemed well enough at that time that she could work and told appellant that it made no personal difference to him when she went back to work. Furthermore, appellant never listed the health of her child as a written reason for use of sick leave, relying instead solely on "maternity."

Appellant and the majority opinion cite *Hoeflinger, supra,* in support of their position that Superintendent Russell abused his discretion by requiring a doctor's statement. However, as both the trial court and appellee have noted, unlike *Hoeflinger,* there was no adopted policy requiring such statement and, more importantly, there was evidence suggesting that Superintendent Russell's determination to disallow appellant's use of sick leave benefits beyond the six-week term following delivery was made on November 27, 1984, prior to any request for such statement.

For the foregoing reasons, in that reasonable minds could come to different conclusions as to whether Superintendent Russell abused his discretion in denying appellant's use of sick leave by determining that it was not being used for the stated reason of her pregnancy, after construing the evidence adduced below most strongly in favor of appellee, the trial court did not err in failing to direct a verdict in favor of appellant and appellant is not entitled to judgment as a matter of law pursuant to App. R. 12(B). Accordingly, I would reverse and remand for a new trial.